

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| JACK GRIFFIN,<br><br>Petitioner,<br><br>vs.<br><br>LEROY KIRKEGARD; ATTORNEY GENERAL OF THE STATE OF MONTANA,<br><br>Respondents. | Cause No. CV 15-24-BU-DLC-JCL<br><br><br>FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |

This case comes before the Court on Petitioner Jack Griffin's application for writ of habeas corpus under 28 U.S.C. § 2254. Griffin, a state prisoner currently incarcerated in the Montana State Prison, is proceeding pro se.

In his petition, Griffin advances six claims for relief:

1) That the trial court exceeded its authority by imposing a sentence to the Department of Corrections of 6 years, 281 days, in violation of Montana statutes and the ex post facto clause;

2) That the sentence of 6 years, 281 days is an illegal sentence in contravention of Griffin's right to due process of law, right to be free of cruel and unusual punishment, and right to equal protection;

3) That the trial court violated Griffin's due process rights by not considering alternatives to incarceration;

1

4) That the trial court exceeded its authority by imposing restrictions upon his probation not authorized by statute;

5) That the trial court acted unlawfully by modifying Griffin's conditions of release without holding a hearing at which Griffin was present; and,

6) That the trial court unlawfully delegated its authority to the Department of Corrections which resulted in a violation of the Eighth Amendment.

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires the Court to examine a section 2254 habeas petition, and "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition[.]" Pursuant to Rule 4, the Court has reviewed the merits of Griffin's claims in his petition, and, for the reasons discussed herein, finds that the petition is without merit and should be dismissed and denied.

I.  **Background**

Mr. Griffin has a substantial filing history in both the state and federal court[1]. The six claims raised here are identical to those previously raised and adjudicated by the Montana Supreme Court in *Griffin v. Kirkegard*, No. OP 15-0265 (Mont. May 15, 2015). Additionally, in *Griffin v. Strutzel*, No. OP 14-0819 (Mont. March 17, 2015), background context was provided for several of Griffin's present claims. Although only four of Griffin's current claims raise a federal

---

[1]See, *State v. Griffin*, No. DA 06-0471, 2007 MT 289 (Mont. 2006); *Griffin v. State*, No. OP 11-0377 (Mont. 2011); *Griffin v. Kirkegard*, No. OP 12-0254 (Mont. 2012); *Griffin v. Strutzel*, No. OP 14-0819 (Mont. 2014). *Griffin v. Kirkegard*, No. OP 15-0265 (Mont. 2015). See also, *Griffin, et al v. Mahoney, et al*, CV-02-21-LBE (Mont. 2002); *Griffin v. Mahoney*, Cause No. CV-03-90-SEH-CSO (Mont. 2003).

constitutional question (claims 1, 2, 3, and 6), all of the claims raised in the present petition were previously denied on state grounds. Therefore, a discussion of the prior state court proceedings is warranted.

The Montana Supreme Court has set out the procedural background as follows[2]:

> Griffin was convicted of sexual intercourse without consent in 1984 and sentenced to thirty years, with fifteen years suspended, in the First Judicial District, Lewis and Clark County. While serving the probationary portion of his sentence, Griffin was convicted of incest and sentenced to thirty years, with fifteen years suspended on September 3, 1998. On September 24, 1998, the First Judicial District Court revoked his suspended sentence and sentenced Griffin to fifteen years in the Montana State Prison (MSP). Both sentences were to run concurrently following our August 22, 2000 Order directing the First Judicial District to amend its order. *See Griffin v. Mont. First Jud. Dist. Ct.*, No. 00-321 (Mont. Aug. 22, 2000). Griffin discharged the custodial portion of his sentence on February 6, 2006.
>
> Since that time, the State has filed three petitions to revoke Griffin's sentence. On November 23, 2009, the District Court revoked his suspended sentence and imposed a term of eleven years, 285 days to MSP, with six years, 281 days suspended. Following Griffin's discharge to the custodial portion of his sentence, the State filed a second petition to revoke in December 2013. The District Court denied the State's petition, imposed a jail sanction for his termination from sexual offender therapy, and returned Griffin to probation supervision.
>
> On May 7, 2014, the State filed a third petition to revoke because of Griffin's alleged failure to re-enter sexual offender counseling, unauthorized contact with minor children, and failure to follow his probation officer's directives regarding his residence. The District Court revoked his six-year, 281 day suspended sentence and re-committed him to the custody of the Department of Corrections (DOC) for six years, 281 days. In its Order, the court noted that the DOC:

---

[2] See, *Griffin v. Strutzel*, No. OP 14-0819 (Mont. March 17, 2015).

3

> shall determine whether to place the Defendant at a state prison, a prerelease facility, or another correctional facility or program such as the Department's Intensive Supervision Program. The Court recommends that the Department consider a placement that facilitates the Defendant's continuing need for sexual offender therapy if available. He has already completed Phases I and II of sexual offender treatment at the state prison.
>
> Ex. 7, Judgment and Order, p. 4. The District Court credited Griffin with 458 days of jail time credit and 556 days of street time credit, or 1,024 days, against his custodial sentence.

*Griffin v. Strutzel*, No. OP 14-0819 at 1-2 (Mont. March 17, 2015).

In that case Griffin challenged the legality of the sentence he had received arguing that by recommending his continued treatment in sex offender therapy, the trial court unlawfully enlarged his sentence. *Id.* at 2. It was Griffin's contention that this sentence violated the ex post facto clause by inflicting a greater punishment due to the associated costs of treatment. *Id.* The Court was not persuaded by this argument, finding that ex post facto concerns are not triggered unless an offender's sentence is changed punitively. *Id.* at 3. The Court recognized that the financial burden Griffin must bear to pay for continued treatment may seem harsh, but it did not create a longer or more punitive sentence. *Id.*

The Court also found Griffin's original sentence to be legal and within statutory parameters. Further, the Court found that when the trial court revoked Griffin's original sentence and imposed the new sentence in 2014, it was within its

authority. *Id.* at 4. The trial court only revoked the remaining suspended portion of the sentence of six years, 281 days, which was lawful under § 46-18-203(7) (c), MCA (1995). *Id.* The trial court did not impose any additional conditions upon Griffin's sentence and credited him with both street time and credit for time served. Finally, the Supreme Court denied relief under MCA § 46-22-101(2), because habeas relief "is not available to attack the legality of an order revoking a suspended or deferred sentence." *Id.*

Griffin filed a subsequent habeas petition in the state court which was also denied. See, *Griffin v. Kirkegard*, No. OP 15-0265 at 2 (Mont. May 5, 2015). In that case, Griffin advanced the same six arguments that he now makes in this habeas petition before this Court. The Montana Supreme Court denied all six claims on state law grounds.

There, Griffin argued he was not challenging the sentence he received upon his revocation, but rather, the original 1998 sentence. *Id.* at 2. In its decision, the Montana Supreme Court noted that it had previously addressed many of Griffin's claims. *Id.* First, the Court cited back to the March 17, 2015 Order, and again held that Griffin's argument that a five year sentence is the maximum that could be imposed under MCA § 46-18-201 was unavailing. *Id.* The proper statute to apply to Griffin's sentence of 6 years, 281 days, imposed following his revocation, was not MCA § 46-18-201 which deals with sentences that may be imposed in the first

5

instance, but rather MCA § 46-18-203 which encompasses sentences to be imposed following a revocation. *Id.* Thus, the Court rejected first claim that the district court exceeded its authority under MCA § 46-18-201.

Additionally, and as previously decided, Griffin's second argument failed because he was originally sentenced under § 45-5-507(3) for felony incest, and received a legal sentence. *Id.* When Griffin was revoked in 2014, the remaining suspended time of six years and 281 days became his legal sentence. This sentence was supported by statute. *Id.*

The Montana Supreme Court was also not persuaded by Griffin's third argument that his due process rights were violated when the trial court failed to consider alternatives to incarceration. Because Griffin was designated as a Level 3 sexual offender, he did not fall into the class of "nonviolent felony offenders who do not have criminal records" contemplated by statute as those individuals eligible for an alternative to incarceration. *Id.*, citing § 46-18-101(2) (f), MCA.

The Court held that Griffin's fourth claim that the trial court exceeded its statutory authority by imposing additional restrictions of continuing sexual offender therapy had been addressed before. In *State v. Griffin*, 2007 MT 289, ¶ 15, 339 Mont. 465, 172 P. 3d 1223, the Court concluded that Griffin's punishment had not been modified, only a condition his supervision. The Court also referred back to the March 17, 2015 Order, wherein it was explained that the trial court did

not exceed its authority when it revoked Griffin's sentence for violating conditions of his probation. *Id.* at 3. Finally the Court held that the trial court has authority to commit an individual to the DOC for sexual offender treatment. *Id.*, citing §§ 46-18-207(4) and (5).

In relation to Griffin's fifth argument that he should have been present for a hearing regarding his 2006 modification of supervision conditions, the Court held that because Griffin voluntarily agreed to be placed on the Intensive Supervision Program (ISP) the trial court issued an order modifying the condition as requested and no hearing was required. *Id.*

Finally, addressing Griffin's sixth argument, the Court held that there was no improper delegation of sentencing authority to the DOC. *Id.* Because Griffin voluntarily agreed to be on ISP and was provided a copy of the ISP contract which he initialed, he had no recourse to challenge the imposition of electronic monitoring as a condition of ISP. *Id.*

Again, the Court noted that Griffin was unable to attack his sentence because he was found guilty and failed to appeal. *Id.* at 4, citing *Lott v. State*, 2006 MT 279, ¶ 4, 19. Griffin waived all non-jurisdictional defects, including any constitutional violations that predated the plea, when he pled guilty. *Id.*, citing *State v. Pavey*, 2010 MT 104, ¶ 11. Thus, Griffin was procedurally barred from habeas corpus relief.

Griffin filed his federal habeas petition on May 14, 2015. Pet. at 8; *Houston v. Lack*, 487 U.S. 266, 270-71 (1988).

## II. Claims

The AEDPA "prevents federal habeas 'retrials'" and ensures that the state court judgments are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-4 (2002). Only noncompliance with federal law renders a state judgment susceptible to collateral attack in federal court. In conducting habeas review, a federal court is limited to deciding whether a state court decision violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); *Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011) (per curium).

### A. Claims 4 and 5

As to claims 4 and 5, Griffin has not asserted a violation of a federal constitutional right. It has been repeatedly held that "federal habeas corpus relief does not lie for error of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." 502 U.S., at 67-68. Accordingly, as to these two claims, there is no basis for federal relief and they should be dismissed for lack of jurisdiction.

### B. Remaining claims

Griffin has asserted a federal constitutional basis for claims 1, 2, 3, and 6;

8

accordingly, they will be addressed in turn.

### (i) Claims 1 and 2

Griffin's first two claims go hand in hand. It is his contention that the sentence that he received upon revocation is illegal because it exceeds the statutory maximum and implicates ex post facto concerns. Griffin also contends that because his sentence is facially invalid, his right to due process, equal protection, and right to be free from cruel and unusual punishment are all implicated.

This Court can understand Griffin's confusion in relation to the sentence that he received upon revocation. Griffin continues to cite § 46-18-201(1) (e) (1997) for the proposition that the six year, 281 day sentence he received at his 2014 revocation was illegal. That 1997 statute read in pertinent part, that the sentencing court could:

> impose a county jail or state prison sentence, as provided in Title 45 for the offense or commit the defendant to the department of corrections for a period not to exceed 5 years for placement in an appropriate correctional facility or program.

§ 46-18-201(1) (e) (1997); (Doc. 1-1 at 1). The successor statute that was in effect at the time of Griffin's revocation, however, states that the sentencing judge can impose a sentence that may include committing:

> [a]n offender...to the department of corrections, with a recommendation for placement in an appropriate correctional facility or program; however, all but the first 5 years of the commitment to the department of corrections must be suspended...

9

MCA 46-18-201(3) (a) (A) (2014).

On their face, both statutes do seem to support Griffin's belief, that one cannot be actually committed to the department of corrections from a period longer than 5 years, without the balance of the additional time being suspended.

The Montana Supreme Court upheld Griffin's revocation sentence, finding that because Griffin was not receiving a new sentence, but rather having the remaining suspended time of his original sentence revoked, and because his original sentence was a legal sentence, there was no constitutional or statutory violation. See *Griffin v. Kirkegard*, No. OP 15-0265 at 2. Moreover, the lower court did not impose any additional conditions and awarded Griffin credit for street time and time served. In its analysis, the appellate court did not directly address Griffin's contention that the trial court was without authority to commit him to the DOC for a period of more than five years. *Id.* There does appear to be some tension between the statutory provisions at issue.

Griffin's confusion, however, can be resolved by a closer analysis of the sentence he received; he did not actually receive a commitment in excess of 5 years to the DOC. When Griffin's suspended sentence was revoked, a commitment of six years, 281 days to the DOC was imposed, which equaled a total of 2,471 days. (Doc. 1-1 at 9). But, the trial court also awarded Griffin credit for 566 days of street time and 458 days credit for jail time for a total of 1,024 days

credit against his custodial commitment. *Id.* Subtracting the credit awarded to Griffin from the custodial sentence imposed shows that Griffin, in reality, received a sentence of 1,447 days. This is equivalent to approximately 3.96 years. Thus, the sentence Griffin received was, in reality, less than the 5 year restriction with which he takes issue. Because this sentence is facially valid, no constitutional concerns are implicated. Griffin's claims in relation to the legality of his sentence are without merit.

### (ii) Claim 4

In determining that the trial court was not required to consider alternatives to incarceration in Griffin's revocation, The Montana Supreme Court relied upon MCA § 46-18-101(2) (f) which sets forth the correctional and sentencing policy for the state. Subsection 2(f) reads:

> [s]entencing practices must provide alternatives to imprisonment for the punishment of those nonviolent felony offenders who do not have serious criminal records.

MCA § 46-18-101(2) (f). As set forth above, Griffin was originally convicted of sexual intercourse without consent and while on probation for that crime he was convicted of incest. Moreover, he was revoked in November of 2009 and sent back to prison. Following the discharge of that custodial sentence, a jail sanction was imposed in December 2013 for Griffin's termination from sexual offender therapy. In 2014, Griffin was revoked yet again for failure to re-enter counseling,

11

having unauthorized contact with minors, and failing to abide by residential requirements. See generally, *Griffin v. Strutzel*, No. OP 14-0819, at 1-2. This conduct hardly qualifies him as a non-violent felony offender without a serious criminal record[3]. Thus, the trial court was well within its statutory discretion to revoke and resentence Griffin to the Department of Corrections.

Griffin cites *Black v. Romano*, 471 U.S. 606 (1985), for the contention that the trial court was required to consider alternatives to incarceration before revoking and sentencing him to the custody of the DOC and that failure to do so violated his right to due process. (Doc. 1 at 5). *Black v. Romano*, however, does not stand for this proposition. In *Black*, the Court specifically held that a sentencing court is **not** required to explicitly set forth its reasoning for why alternatives to incarceration were rejected. *Black*, 471 U.S. at 611. Additionally, *Black* discussed the procedural safeguards required to ensure that due process is not offended during revocation proceedings. These include: holding a hearing, providing written notice of the claimed violations of probation to the probationer, disclosure of the evidence against the probationer, an opportunity for the probationer to be heard in person and present witnesses and evidence on his behalf, the presence of a neutral factfinder, and, upon revocation, presentation of a statement as to the reasons underlying the revocation. *Black*, 471 U.S. at 612, citing *Gagnon v.*

---

[3] In this Court's view, Griffin's history and actions place him more in line with the class of individuals contemplated by MCA § 46-18-101(2)(e): "[s]entencing practices must include punishing violent and serious repeat felony offenders with incarceration."

12

*Scarpelli*, 411 U.S. 778, 786 (1973). *Black* went on to emphasize that so long as these procedures are followed, that the probationer has an opportunity to present mitigating evidence and to argue alternatives to imprisonment, and that the factfinder states the reason for its decision and the evidence relied upon, procedural due process is satisfied. *Black*, 471 U.S. at 614. These requirements were satisfied in Griffin's case.

As evidenced by the documents submitted by Griffin, an evidentiary hearing was held on July 24, 2014. (Doc. 1-1 at 8). On August 4, 2014, the trial court entered an order granting the State's petition to revoke Griffin's suspended sentence and scheduled a sentencing hearing. *Id.* On November 10, 2014, at the sentencing hearing, Griffin presented one witness on his behalf and argued that he should be sentenced to time already served and be immediately released from custody. *Id.* Griffin was represented by counsel at each of these proceedings. The court subsequently issued a written order revoking Griffin and providing the basis for its decision. *Id.* at 9.

By statute, the trial court was not required to consider an alternative to incarceration and Griffin did not fall into the class of individuals eligible for alternatives to incarceration. Moreover, the revocation proceedings complied with due process requirements. Griffin has not established a due process violation and this claim is without merit.

### (iii) Claim 6

Griffin's final claim is that the trial court improperly delegated its sentencing authority to the DOC which resulted in Griffin being subjected to cruel and unusual punishment. The Montana Supreme Court rejected this argument. *Griffin v. Kirkegard*, No. OP 15-0265 at 3. Furthermore, even accepting Griffin's assertion that the DOC added electronic monitoring, this does not constitute cruel and unusual punishment. The addition of electronic monitoring as a condition of Griffin's sentence did not create an extreme sentence that was grossly disproportionate to his crime. See, *Graham v. Florida*, __ U.S. __, 130 S. Ct. 2011, 2012 (2010). Griffin's Eighth Amendment claim is without merit.

### III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254 Proceedings. A COA should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C.. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

14

Griffin has not made a substantial showing that he was deprived of a constitutional right. There are no close questions and there is no reason to encourage further proceedings. A certificate of appealability should be denied.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1. Griffin's claims 4 and 5 should be DISMISSED for lack of jurisdiction.

2. Griffin's claims 1, 2, 3, and 6 should be DENIED for lack of merit.

2. The Clerk of Court should be directed to enter, by separate document, a judgment of dismissal.

3. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Griffin may object to this Findings and Recommendation within 14 days.[4] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Mr. Griffin must immediately notify the Court of any change in his mailing address</u> by filing a "Notice of Change of Address." Failure to do so may result in

---

[4] As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.

15

dismissal of this action without notice to him.

DATED this 12th day of August, 2015.

                            /s/ Jeremiah C. Lynch
                            Jeremiah C. Lynch
                            United States Magistrate Judge